## OREM v. KNIESCHE et al.
### No. 28.

District Court, D. Maryland.
April 26, 1939.

F. Gray Goudy, of Baltimore, Md., for plaintiff.

John E. Magers, of Baltimore, Md., for defendant Kniesche.

CHESNUT, District Judge.

This is a patent case of an unusual nature. The parties have had a three-cornered patent interference proceeding in the United States Patent Office. This grew out of three separate applications for a patent filed by the parties respectively on which the Patent Office declared two interference proceedings and as a result of which the Examiner in the interference proceedings decided that the defendant, Kniesche, was the prior inventor of the device process comprehended by the three respective patents. On appeal to the Board of Appeals in the Patent Office this finding was affirmed. Thereafter, and within due time (October 29, 1938) the plaintiff, William H. Orem, filed his bill of complaint in this court under United States Code, Title 35, § 63, 35 U.S.C.A. § 63, seeking a decree of this court to the effect that he was entitled to the patent applied for by him in the Patent Office. The original bill was filed against Kniesche only but the amended bill, filed November 9, 1935, also made Merle P. Chaplin a party defendant; and the latter has filed an answer and cross-bill asserting in effect that the patent should be issued to him. Motions have been made by Kniesche to dismiss the answer and cross-bill of Chaplin on the ground first, that Chaplin is not a necessary or proper party and secondly, as to his cross-bill, that it was not filed within time under the statute. Both motions have been overruled.

The particular statute provides in effect that when a patent is refused by the Commissioner of Patents, and no appeal has been taken from the decision of the Board of Appeals to the United States Court of Customs and Patent Appeals, the applicant for the patent may within six months after the refusal of the Patent Office to give him the patent, file a bill in equity in the proper District Court to obtain a decree that he is entitled to have the patent issued to him. The statute further provides that—

"The testimony and exhibits, or parts thereof, of the record in the Patent Office when admitted shall have the same force and effect as if originally taken and produced in the suit";

but with the right of the parties to take further testimony in court. Pursuant thereto, testimony has now been taken in this court on behalf of Orem and Kniesche and certain parts of the record or proceedings in the Patent Office have also been offered in evidence; but no testimony has been submitted on behalf of Chaplin.

After hearing and considering the testimony and arguments of counsel, I have concluded that the decision of the Board of Appeals in the Patent Office was correct and that the refusal of the Commissioner of Patents to issue a patent to Orem should not be reversed. The opinion of the Board of Patent Appeals deals principally with the technical situation presented by the interference proceedings in the Patent Office, and is more clearly to be understood when we have the background of the relationships of the parties and the development of the controversy as explained in the testimony taken here. Disregarding immaterial details, the facts are substantially as follows:

The plaintiff, Orem, is a business man who for more than sixty years past has been actively engaged in the drug business. About 1929 he became very interested in developing an improved cap or hood for milk bottles. His principal object was to devise a cap that would securely protect the milk in the bottle from accidental contamination and would also be of such a nature that if intentionally removed and replaced would, by its then appearance, indicate that it had been intentionally removed and replaced. The reason for the

latter requirement is attributable by the witness to the prevalence or habit of the drivers of certain milk delivery wagons, desiring to increase their customers, in intentionally removing the caps from milk bottles delivered by other carriers, and introducing some foreign or deleterious substance prejudicial to the purity and taste of the milk, for the purpose of having the customer become dissatisfied with the particular company and thereafter securing his or her patronage for himself. To this end Mr. Orem experimented for several years with various types of milk bottle caps or hoods, using various forms of paper, sometimes treated with boracic acid or paraffin or other liquid substances. As a result of some of his experiments he decided that a machine was necessary for molding or clamping the cap on the neck of the bottle mouth or lip, and to secure this he applied to Demco, Inc., in Baltimore City, to make such a machine. The defendant, Kniesche, was there employed as a mechanical draftsman, and the work was assigned to him. Shortly thereafter Kniesche left the employ of Demco, Inc., and Orem and Kniesche continued to collaborate until satisfactory designs were produced for such a machine which was subsequently patented in the name of Kniesche, and nine-sixteenths interest therein assigned to Orem. This is known as the "molding" machine. Subsequently Mr. Orem conceived the idea that another machine was necessary for the purpose of "plaiting" the lower portion of the hood which fits around the neck of the bottle. He had such a machine made by Stevenson & Co., manufacturing machinists in Baltimore City. The part played by Kniesche in designing this machine is somewhat uncertain but is immaterial. Both machines, the molding and the plaiting, were thereafter from about August 1930 to 1932 or later, kept for convenience in the home of Kniesche in Baltimore City and various further experiments were made thereon by Kniesche or Orem, but principally by Kniesche, with various types of caps. An important difficulty was in securing the type of cap, with respect to the material composing it, to accomplish their ultimate purpose in the matter. About September 1930 the idea occurred to Mr. Orem that a material consisting of wood pulp or fibre would have sufficient plasticity and he thereupon suggested this to Kniesche. There is controversy in the testimony between Kniesche and Orem as to whether Kniesche was receptive to the idea. Orem contends that Kniesche rejected it absolutely for some months. But Kniesche contends that independently of Orem he had experimented with wood pulp, but found the real difficulty was that the process of plaiting the so-called skirt or bottom portion of the cap left so large a surplus of material that it could not be compressed around the neck of the bottle except by an impracticable amount of pressure. To meet this difficulty Kniesche conceived the idea, that instead of plaiting the skirt of the cap, vertical corrugations or ridges could be made on the inside of the skirt as it fits over the neck of the bottle, consisting of alternate parallel ridges and depressions in the material, whereby the depressed portions would be relatively thin and hard and the undepressed or raised portions would be relatively thick and soft. When a cap so pre-formed was applied to the bottle and then the skirt compressed around the neck of the bottle by the molding machine, the desired result was obtained when the wood fibre was used. The technical process involved was, as a result of pressure the ridges and depressions were consolidated by the re-formation of the particles of the plastic wood fibre so that the periphery or bottom edge of the skirt of the cap was shortened or contracted, thus resulting in a tight fit of the bottom of the cap around the neck of the bottle. The ultimate purpose is said to have been thus achieved whereby the cap when undisturbed would completely seal the mouth of the bottle and prevent accidental contamination of the milk; and if the cap were intentionally removed it would crack or break so that, if replaced, intentional interference with it would at once be evident to the consumer.

In January and February 1932 Orem and Kniesche, who were still closely collaborating, interested the Keys Fibre Co. of Waterville, Maine, in the device and obtained from that company a supply of pre-formed wood fibre caps for their use. Merle P. Chaplin, one of the defendants herein, was the engineer for the Keys Company. He came to Baltimore and conferred with Orem and Kniesche, and the latter explained the feature of the vertical corrugations on the inside of the skirt of the cap. In the letters of January 11, 1932 and February 17, 1932, written by Orem to the Keys Company, Mr. Orem referred to Kniesche's particular ideas in this re-

spect. The pre-formed caps supplied by the Keys Company did not have the inside corrugations referred to. Kniesche found that he could produce them by using a part but not the whole of the plaiting machine which Mr. Orem had obtained from the Stevenson Co. I am satisfied from the testimony, and particularly that of Kniesche, that this idea of the corrugations, instead of the plaits was Kniesche's conception and not Mr. Orem's; or, in other words, that Kniesche was the inventor of this idea. Indeed Mr. Orem not being a mechanical engineer or draftsman was quite unfamiliar with the exact technical process which was achieved as a result of adopting the corrugations instead of the plaits.

After the wood pulp cap with the inside corrugations had been developed, and although up to that time Kniesche and Orem had been closely collaborating, Mr. Orem, without consulting or advising Kniesche, applied to a patent attorney in Baltimore, a Mr. Buck, who practiced in the Patent Office but was not a lawyer admitted in the courts, to obtain for him a patent on the completed device. Mr. Buck obtained his information from Orem without conference or help from Kniesche. The patent application on behalf of Orem alone was filed June 25, 1932, and resulted in the issuance of patent No. 1900127, on March 7, 1933. In the application one object is described as follows:

"to provide a hood which is thief-proof; that is, a cap or hood which protects the contents of the bottle so that the drivers or delivery men of the different dairies, who are paid a commission on new customers they obtain, cannot remove the hoods to contaminate or adulterate the milk for the purpose of getting the customer from the dairy which originally delivered the milk to the door of the customer, without showing that the hood has been tampered with."

Other purposes were stated to be to produce a cap that would eliminate the entrance of impurities and one which could be formed of comparatively inexpensive and light material at reduced cost. The applicant stated that the material to be used was preferably spruce fibre pulp intermixed with paraffin or other suitable plastic waterproofing material to render the hood brittle and substantially unstretchable after it is molded and finished on the bottle-mouth-bead. The only reference to the plaiting or corrugations above referred to in the specifications was as follows:

"In forming the unfinished hoods such as shown in Fig. 1, the above-mentioned composition, or any suitable substitute therefor, is molded into a cup having a flared wall or skirt; next, this skirt is fluted or plaited, by any appropriate means, the flutes or plaits extending straight from bottom to top of the skirt and being slightly deeper at the lower margin so the skirt is thereby rendered substantially the same diameter at the bottom as at a plane near the top, from which plane it is upwardly and inwardly curved to fit the bottle-mouth snugly."

The claims are stated as follows:

"1. The method of forming a bottle-mouth-hood, consisting in, first providing a molded cup having a substantially cylindrical wall which includes fibrous and fusible materials; second, applying moisture to the cup for softening it; third, placing the cup of softened material with its wall around the bead of the bottle-mouth; and fourth, simultaneously applying centripetal pressure and heat sufficient to complete the molding of the hood around and under the bead and to evaporate the moisture and thus render the finished molded hood brittle so it cannot be removed from the head without breaking the fibres of the material which composes the hood.

"2. In combination with a bottle having a bead around its mouth, a closing disc in said mouth spaced below the upper extremity of the mouth, and a brittle and substantially unstretchable protecting hood formed of a composition which includes plastic waterproofing and fibrous materials intermixed and permanently molded under high temperature into an inverted cup which is of substantially uniform thickness and snugly fits over and around and under said bead while being spaced from said closing disc and free from folds or plaits and also free from adhesion to the bottle, whereby it is held on the bottle by its inherent tenacity and is removable only by breaking the part that extends under the bead of the bottle."

It will be noted that the patent is a method or process patent but the claims do not include the important element of the vertical corrugations on the inside of the skirt of the cap. And indeed the feature of plaiting the skirt, which was an important development in the process of Mr. Orem's experimentation, is referred to

only incidentally and subordinately in the patent application. This was evidently due to the fact that Mr. Orem had not emphasized this feature of the matter to Mr. Buck. Indeed it appears that Mr. Buck had substantially completed the application before Mr. Orem made any reference to the plaiting feature. The machine therefor was not patented and when Mr. Orem called to Buck's attention the omission of this detail Mr. Buck said it could be added as a recital and this was done in the way above quoted. It seems entirely clear that Mr. Orem did not explain to Mr. Buck that the final essential to the success of the bottle cap as perfected was due to the substitution of vertical corrugations instead of the plaiting as above described.

In the process of endeavoring to exploit the device, Mr. Orem conferred with the officers of a large dairy concern in the West who came to Baltimore to see him and they then met Mr. Kniesche. In the course of the conference it developed that Mr. Orem had made application for the patent which was the first information or notice that Kniesche had of that fact, and this led at once to a break in the relations between Kniesche and Orem, as Orem claimed the successful feature of the device was his invention and certainly not that of Kniesche alone.

Thereafter in October 1932, Kniesche filed his patent application, claim 12 of which read as follows:

"The method of making a sealing cap for a bottle having an outwardly convexed lip surrounding its mouth, which comprises molding from paper pulp a cap having a flared surrounding flange, compressing the flange at intervals spaced circumferentially thereof on lines extending transversely of the circumference of the flange, leaving intervening uncompressed portions, applying the cap to the bottle mouth with its flange surrounding the lip thereof, and pressing the flange of the cap while moist inwardly uniformly around its circumference against the lip of the bottle to cause interlapping of the fibres composing the wall of the flange and thereby contract the flange circumferentially and mold it to the shape of the lip while applying heat to said flange to permanently set it in such molded shape."

Kniesche's application was still pending in the Patent Office in 1934. Chaplin, who seems to have been more or less acting in

conjunction with Orem, filed his application for a patent for a similar device. Later the Patent Office declared interference on several counts between Kniesche and Chaplin and then after conference between Chaplin and Orem, the latter filed an application for another patent on March 6, 1935, only two days before the expiration of two years after the granting of Orem's first patent. The Patent Office thereupon declared a second interference No. 72011 between Orem and Kniesche in the following count:

"The method of preparing a fibrous cap for application to the mouth of a bottle, which comprises forcing the cap having a flange portion thereon, through a die having ridges thereon parallel to the direction of motion of the cap through the die, thus compressing the flange portion of the cap at intervals spaced circumferentially thereof, leaving intervening uncompressed sections of the flange portion of greater thickness than the compressed sections thereof."

In the interference proceeding considerable testimony was taken on behalf of Orem, and then Kniesche was examined, it is said, for eighteen days; but he finally discontinued his testimony because it was taking too much time from his other employment, and Kniesche abandoned the testimony taken on his behalf submitting his case on the filing date, with the procedural result of allowing the case to be decided on Orem's testimony with the contention that it did not show that Orem was the prior inventor. Nevertheless Orem submitted to the Patent Office the partial testimony of Kniesche which had been given and this was considered by the Examiner of Interferences after various proceedings in the case.

The question of the patentability of the several patent applications was not considered by the Patent Office in the interference proceeding, the issue in which was solely priority of invention, with respect to the particular patent applied for by the three parties respectively. The Patent Office concluded on all testimony that Kniesche was the prior inventor, and I reach the same conclusion here. It is evident I think from the recital of the facts that Orem's present patent application is in a measure an after-thought and a purely defensive proceeding to Kniesche's patent application. It is entirely clear on the facts that Orem has made no improvement on the bottle cap since his patent 1900127

was issued to him. The other bottle cap device on which he is now asking the additional patent was perfected by him and in fact submitted to the Patent Office in the prosecution of his first patent application. This second patent application contained nine claims, the last of which reads as follows:

"The method of applying a hood or cap to a bottle having a bead around its mouth, which consists in placing over the mouth of the bottle a molded hood of paper pulp, having an outwardly flared skirt formed with circumferentially spaced compressed portions and with uncompressed portions alternating therewith, all of said portions extending from the edge of the skirt toward the top of the hood and said uncompressed portions being of greater thickness than the said compressed portions, and then uniformly compressing the uncompressed portions of the skirt while moist against the bottle with sufficient pressure to produce an interlapping of the fibres of said compressed and uncompressed portions, and also to provide a uniform circumferential thickness in the skirt and to mold the skirt to the shape of the bead, and applying sufficient heat to said skirt to set it in its molded shape."

It is also very clear that insofar as this claim represents a patentable invention, the idea involved and as therein expressed was conceived by Kniesche and not by Orem. As already stated, Mr. Orem did not understand or appreciate the mechanical process involved in the claim as made. From his testimony it is apparent that his thought in the matter is that because he wished to achieve a particular result and engaged Kniesche as a mechanic, he is entitled to be considered the inventor of Kniesche's conception of the particular mechanical process in achieving the result. In this he is incorrect. Mr. Orem's testimony here shows an inconsistency or at least uncertainty in his position about the matter. He now says that he understood in 1932 when he applied for the first patent, that there was a material functional difference between plaiting the skirt of the bottle cap and forming it with the vertical ridges of alternate compressed and uncompressed portions on the inner side of the skirt; but that now he understands that there is no real difference between the two devices. His apparent position is that by misunderstanding or lack of care his first patent application was not properly worded and should be now corrected. The present application is not for a re-issue patent but for an additional patent, on the theory that the first patent application did not disclose the whole invention. During the interference proceeding he also apparently submitted the contention by his attorney that Kniesche's patent application was anticipated by his, Orem's, first patent.

The only issue here is whether Orem is entitled to the issuance of a patent on his present application. And on this issue I conclude that he is not so entitled because the testimony shows that he is not the inventor of what he now claims. I do not understand that there is any issue now presented as to whether Kniesche is entitled to receive the patent from the Patent Office, nor as to the validity of the patent that may be issued to him.

As Chaplin has submitted no testimony here, his cross-bill against Kniesche will be dismissed with costs. And I likewise conclude on the whole case that Orem's amended bill of complaint against both Kniesche and Chaplin must be dismissed with costs. This opinion, with the findings of fact and conclusions, is intended to be in compliance with Rule 52 of Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Counsel should submit the appropriate order for judgment of dismissal with prejudice in due course.